```
FILED
Apr 29 2021
3:40 pm
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY   s/ dominicf   DEPUTY
```

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

April 2021 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>  v.<br><br>BRIAN VOLMER (1),<br>JOSHUA YAFA (2),<br>JAMIE YAFA (3),<br>CHARLES STRONGO (4),<br>CARL MARCINIAK (5),<br><br>                Defendants. | Case No.   '21 CR1310 WQH<br><br>I N D I C T M E N T<br><br>Title 18, U.S.C., Sec. 371 – Conspiracy; Title 15, U.S.C., Secs. 78j(b), 78ff, and Title 17, C.F.R., Sec. 240.10b-5 – Securities Fraud; Title 18, U.S.C., Sec. 2 – Aiding and Abetting; Title 18, U.S.C., Sec. 981(a)(1)(C), and Title 28, U.S.C., Sec. 2461(c) – Criminal Forfeiture |

The Grand Jury charges, at all times material:

### INTRODUCTORY ALLEGATIONS

Relevant Individuals and Entities

1.   Defendant BRIAN VOLMER, a California resident, solicited funding and arranged stock promotion on behalf of various small, thinly-capitalized (or "microcap") companies.

2.   Defendant JOSHUA YAFA, a Florida resident, worked as a stock promoter; in that role, he was directly or indirectly compensated to encourage investors to invest in various microcap companies.

APA:nlv(1):San Diego:4/29/21

3. Defendant JAMIE YAFA, a Florida resident, and the brother of JOSHUA YAFA, also worked as a stock promoter.

4. Defendant CHARLES STRONGO, a California resident, participated in the management and control of Nunzia Pharmaceutical Corp. and Global Wholehealth Partners Corp.

5. Defendant CARL MARCINIAK, a California resident, worked with VOLMER in soliciting funding and arranging stock promotion on behalf of various small, thinly-capitalized (or "microcap") companies.

6. Nunzia Pharmaceutical Corp. (ticker: NUNZ) was an entity incorporated in the state of Utah, with its principal place of business in Long Beach, California. The company purported to develop and deliver pharmaceutical and nutraceutical-based therapies for the behavioral symptoms of Autistic Spectrum Disorder and related conditions and other anxiety-based disorders.

7. Global WholeHealth Partners Corporation (ticker: GWHP) was originally incorporated in the state of Nevada under the name Texas Jack Oil and Gas Corp. for the purpose of oil and gas exploration. The company purported to focus on health care related development and products. Its products purportedly included COVID-19 diagnostic tests.

8. Confidential Witness 1 ("CW-1") was a resident of the Southern District of California, and has worked as a stock promoter.

9. Undercover FBI Agent ("UC-1") was introduced to the defendants as a business associate of CW-1.

10. A pump-and-dump scheme was a fraudulent scheme that typically involved the artificial inflation of the trading volume and stock price of a publicly-traded company (the "pump") so that individuals who control a substantial portion of the company's stock could sell shares of that stock at artificially high prices to other investors (the "dump").

Generally, such schemes effected the artificial inflation in trading volume and share price by, among other things, issuing public corporate announcements and promotional materials - often containing false, misleading, or exaggerated information - regarding the company and its stock and by engaging in manipulative trading of the stock to affect its price and generate the appearance of demand for the shares.

## Count 1 - Conspiracy

(18 U.S.C. § 371)

11. Paragraphs 1 through 10 of the Introductory Allegations above are re-alleged as if fully set forth herein.

12. Beginning on a date unknown to the Grand Jury but no later than September 2019, and continuing until March 2021, within the Southern District of California and elsewhere, defendants BRIAN VOLMER, JOSHUA YAFA, JAMIE YAFA, CHARLES STRONGO, and CARL MARCINIAK, and other individuals and entities known and unknown to the Grand Jury, did knowingly and intentionally conspire to commit an offense against the United States, that is, securities fraud, namely, to knowingly and willfully, directly and indirectly, by the use of the means and instrumentalities of interstate commerce and of the mails, use and employ manipulative and deceptive devices and contrivances in connection with the purchase and sale of securities by (a) employing devices, schemes and artifices to defraud, (b) making and causing to be made untrue statements of material fact, and omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon any persons, including members of the investing public and sellers and purchasers of NUNZ's and GWHP's

3

securities, in violation of Title 15, United States Code, Sections 78j(b), 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5.

### MANNER AND MEANS

13. It was a part of the conspiracy that the coconspirators would enrich themselves by engaging in a pump and dump market manipulation scheme surrounding NUNZ and GWHP stock, including exploiting the COVID-19 pandemic by touting a COVID-19 testing product to artificially generate interest in GWHP stock.

14. It was further part of the conspiracy that one or more defendants would distribute proceeds from sales of NUNZ and GWHP stock to other conspirators.

15. It was further part of the conspiracy that STRONGO would seek funding for NUNZ and GWHP.

16. It was further part of the conspiracy that STRONGO would engage VOLMER and MARCINIAK to seek out others to provide funding to NUNZ and GWHP.

17. It was further part of the conspiracy that STRONGO would engage VOLMER and MARCINIAK to identify parties to promote NUNZ and GWHP, and the stock of each of these companies, in order to artificially avoid the deflation of, maintain the price of, and inflate the share price of such stock.

18. It was further part of the conspiracy that VOLMER and MARCINIAK would engage others, including JOSHUA YAFA and JAMIE YAFA and the entities they controlled, to promote NUNZ and GWHP, and the stock of each of these companies, in order to artificially avoid the deflation of, maintain the price of, and inflate the share price of such stocks.

19. It was further part of the conspiracy that, in exchange for compensation, JOSHUA YAFA and JAMIE YAFA and the entities they controlled would promote, and find others to promote, through false, misleading, and exaggerated statements and omissions, NUNZ and GWHP and the stock of each of these companies, in order to artificially avoid the deflation of, maintain the price of, and inflate the share price of such stock.

20. It was further part of the conspiracy that the conspirators would accept funding from CHS-1 in exchange for one or more notes that were convertible into NUNZ and GWHP stock.

21. It was further part of the conspiracy that STRONGO would arrange for the transfer of significant blocks of NUNZ and GWHP stock into financial accounts held in the names of VOLMER, JOSHUA YAFA, JAMIE YAFA, and MARCINIAK, and their nominees.

22. It was further part of the conspiracy that JOSHUA YAFA would engage call room operators to contact potential investors and convince them, through false, misleading, or exaggerated information, to purchase NUNZ and GWHP stock.

23. It was further part of the conspiracy that JOSHUA YAFA and JAMIE YAFA would promote NUNZ and GWHP and their stock through the use of email newsletters, which included false, misleading, and exaggerated statements and omissions, in order to artificially avoid the deflation of, maintain the price of, and inflate the share price of, NUNZ and GWHP stock.

24. It was further part of the conspiracy to gather and share information regarding who owned NUNZ and GWHP free trading stock, in order to conduct the manipulation scheme in a more profitable manner and determine where promotional efforts might be more and less effective.

25. It was further part of the conspiracy to engage in manipulative trading in NUNZ and GWHP stock in order to artificially avoid the deflation of, maintain the price of, and inflate the share price of, NUNZ and GWHP stock.

26. It was further part of the conspiracy that STRONGO would create corporate public announcements -- some of which contained false, misleading, and exaggerated statements and omissions -- to be released by NUNZ and GWHP, and attempt to release such announcements in conjunction with efforts to promote NUNZ and GWHP and their stock, in order to artificially avoid the deflation of, maintain the price of, and inflate the share price of, NUNZ and GWHP stock.

27. It was further part of the conspiracy that one or more conspirators would directly or indirectly sell NUNZ and GWHP stock into the open market to unsuspecting purchasers after the share prices of these stocks were artificially impacted by the scheme.

28. It was further part of the conspiracy that defendants would communicate by phone, email, and encrypted communications about the status and progress of the conspiracy.

29. It was further part of the conspiracy that defendants would establish and use nominees, both domestic and offshore, and act through nominees for the purpose of concealing their identities and actions for various purposes, including for the purpose of avoiding regulatory scrutiny and misleading regulators or other law enforcement personnel who investigated securities-related activities related to GWHP, NUNZ and the stock of these companies.

## OVERT ACTS

30. In furtherance of the conspiracy and to effect and accomplish the objects thereof, the following overt acts, among others, were committed within the Southern District of California and elsewhere:

   a. On or about the following dates, STRONGO caused GHWP to publish the following press releases using the facilities of interstate and foreign commerce:

| Date | Subject |
| --- | --- |
| June 25, 2020 | Global WholeHealth Partners Submits COVID-19 Diagnostic Test EUA Application rt-qPCR Test: PEUA200084 |
| July 1, 2020 | Global WholeHealth Partners Submits Made in the USA COVID-19 Diagnostic Test EUA Application |
| August 31, 2020 | Global WholeHealth Partners Corp. Today Announced Goldman Small Cap Research has Published an Initial Analyst Report Covering GWHP's Outlook |
| January 20, 2021 | Global WholeHealth Partners Corp (GWHP-OTC) to Announce that the Antibody Test Kits Offered by Global Can Detect the Mutated COVID-19 Strain |

   b. On or about the following dates, JAMIE YAFA caused the email address at info@otctipreporter.com to send email blasts to subscribers, using the facilities of interstate and foreign commerce, to tout GWHP and its stock to investors: August 28-31, 2020;

September 11-15, 17, 20-22, 24, 2020; November 3-5, 11, 12, 15-18, 20, 2020; and January 12-14, 28, 2020.

   c. On or about the following dates, JAMIE YAFA caused the email address at info@marketcaliber.com to send email blasts to subscribers, using the facilities of interstate and foreign commerce, to tout GWHP and its stock to investors: August 29, 30, 2020; September 11-14, 15, 20-22, 2020, and November 3-5, 11, 12, 15-17, 2020.

   d. On or about October 15, 2019, and pursuant to instructions from Volmer, UC-1 transferred $10,000 to a bank account in the name of LionsGate Funding Management LLC, pursuant to a promissory note. LionsGate Funding Management LLC was a nominee used by STRONGO.

   e. On or about December 9, 2019, VOLMER met in person with CHS-1 and UC-1 in the Southern District of California to discuss manners in which NUNZ and GWHP could be promoted.

   f. On or about June 28, 2020, JOSHUA YAFA spoke on a call with CHS-1 and UC-1, who were in the Southern District of California during the call, about the status of and future plans for promotional efforts surrounding GWHP and its stock.

   g. On or about March 4, 2021, several conspirators held a meeting in the Southern District of California with CHS-1 and UC-1 to discuss, among other things, the status and history of their efforts to promote GWHP, prospective efforts to promote other stocks, and manners in which to establish offshore nominee accounts. VOLMER, CHS-1, and UC-1 attended the meeting in person. JAMIE YAFA and MARCINIAK called into the meeting by telephone.

All in violation of Title 18, United States Code, Section 371.

//
//

8

Count 2 – Securities Fraud

(Title 15, U.S.C., Secs. 78j(b), 78ff, and
Title 17, C.F.R., Sec. 240.10b-5, and Title 18, U.S.C., Sec. 2)

31.  The allegations set forth in paragraphs 1 through 10 are re-alleged as if fully set forth herein.

32.  Beginning on a date unknown to the Grand Jury but no later than September 2019, and continuing until in or about March 2021, within the Southern District of California and elsewhere, defendants BRIAN VOLMER, JOSHUA YAFA, JAMIE YAFA, CHARLES STRONGO, and CARL MARCINIAK did knowingly and willfully, directly and indirectly, by the use of the means and instrumentalities of interstate commerce and of the mails, use and employ manipulative and deceptive devices and contrivances in connection with the purchase and sale of securities issued by Global WholeHealth Corp., in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by (a) employing devices, schemes and artifices to defraud, (b) making and causing to be made untrue statements of material fact, and omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon any persons, including members of the investing public and sellers and purchasers of Global WholeHealth Corp.'s securities.

//
//
//
//
//
//

33. Paragraphs 13 through 29 of Count 1 are realleged and incorporated by reference as more fully describing the manipulative and deceptive devices and contrivances used in connection with the purchase and sale of securities.

All in violation of Title 15, United States Code, Sections 78j(b), 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5, and Title 18, United States Code, Section 2.

### FORFEITURE ALLEGATIONS

34. The allegations contained in paragraphs 1 through 10 and Counts 1 and 2 of this Indictment are re-alleged and incorporated by reference for the purpose of alleging forfeiture to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

35. Upon conviction of one or more of the offenses set forth in Counts 1 and 2, defendants BRIAN VOLMER, JOSHUA YAFA, JAMIE YAFA, CHARLES STRONGO, and CARL MARCINIAK shall forfeit to the United States any property, real and personal, constituting or derived from proceeds traceable to such offenses. The property to be forfeited shall include but is not limited to, a money judgment in favor of the United States in an amount equal to the total amount of proceeds obtained directly or indirectly as a result of the offenses.

36. Pursuant to Title 28, United States Code, Section 2461(c) which incorporates the provisions of Title 21, United States Code, Section 853(p), the defendants shall forfeit substitute property, up to the value of the amounts described above, if, as a result of any act or omission of the defendants, the property described above, or any portion thereof, cannot be located upon the exercise of due diligence; has been

10

transferred, sold to, or deposited with a third party; has been placed beyond the jurisdiction of this court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty.

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

DATED: April 29, 2021.

RANDY S. GROSSMAN
Acting United States Attorney

By: *[signature]*
AARON P. ARNZEN
Assistant U.S. Attorney